IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

| | | |
|---|---|---|
| **Steve Wesley Gorrie,** | : | **Case No. 2:19-cv-911** |
| 6004 Merrick Drive, | : | |
| Peachtree City, GA 30269, | : | **District Judge:** _____ |
| | : | |
| Plaintiff, | : | **Magistrate Judge:** _____ |
| | : | |
| vs. | : | **Complaint for Damages** |
| | : | |
| **801 Polaris, LLC** | : | **Jury Demand Endorsed Hereon** |
| c/o Kaufman Development | : | |
| 30 Warren Street | : | |
| Columbus, OH 43215, | : | |
| | : | |
| <u>Serve</u>: Harlan W. Robins, Esq. | : | |
| 15 N. 4th Street | : | |
| Columbus, OH 43215, | : | |
| | : | |
| Harlan W. Robins, Esq. | : | |
| 150 E. Gay Street, Ste 2400 | : | |
| Columbus, OH 43215, | : | |
| | : | |
| and | : | |
| | : | |
| **Kaufman, LLC** | : | |
| d/b/a Kaufman Development | : | |
| 30 Warren Street | : | |
| Columbus, OH 43215, | : | |
| | : | |
| <u>Serve</u>: Harlan W. Robins, Esq. | : | |
| 65 E. State Street, Suite 2100 | : | |
| Columbus, OH 43215, | : | |
| | : | |
| Harlan W. Robins, Esq. | : | |
| 150 E. Gay Street, Ste 2400 | : | |
| Columbus, OH 43215, | : | |
| | : | |
| and | : | |
| | : | |
| **Bradley S. Slomsky,** | : | |
| **Sr. Community Curator** | : | |
| C/o 801 Polaris, LLC | : | |
| 801 Polaris Pkwy | : | |
| Columbus, OH 43240, | : | |
| | : | |
| Defendants. | : | |

**Introduction**

1. Plaintiff Steve Wesley Gorrie presents this Complaint for Damages due to Defendants' breach of contract; breach of implied warranty of habitability; constructive eviction; fraud in the inducement; negligence; negligence per se; nuisance; intentional infliction of emotional distress; negligent infliction of emotional distress; and state law civil conspiracy.

2. Mr. Gorrie currently resides in Georgia. All Defendants reside or are domiciled in Ohio. Mr. Gorrie seeks money damages in excess of $75,000, excluding costs and interest.

3. Mr. Gorrie stayed in a rented apartment from approximately April 5, 2016 to May 12, 2017. 801 Polaris, LLC rented the apartment home to Mr. Gorrie. (Ex. A, Lease, attached, relevant pages only.)

4. Defendant 801 Polaris, LLC operates if not owns the apartments at 801 Polaris Parkway, Columbus, Ohio 43240, one of which Mr. Gorrie rented. Its principal office is in Franklin County, City of Columbus, Ohio.

5. Defendant Kaufman, LLC, doing business as Kaufman Development, owns and operates the apartments at 801 Polaris, LLC. Its principal office is in Franklin County, City of Columbus, Ohio.

6. Defendant Kaufman, LLC also owns other housing developments in the central Ohio area.

7. Defendant Kaufman, LLS's developments include as follows: 80 on the Commons; 250 High; 600 Goodale; 801 Polaris; The Gramercy New Albany; The Leveque Tower Residences; LVQ Apartments; Gravity; and Market & Main.

8. Defendants promise through its websites a holistic living experience.

9. As to 801 Polaris, Defendants describe the living experience as follows: "This four-story mid-rise in the Polaris Fashion district brings high design to convenient living. Kaufman Development's second property in the address collection, 801 Polaris features one- and two-

2

bedroom apartments with open floor plans, high-end finishes and modern aesthetics. These spacious floor plans are designed to enhance your inspired and purposeful lifestyle." (See http://livekaufman.com/communities/polaris/, as viewed March 11, 2018.)

10. Defendants also promise through its website that, "Our communities are built on a philosophy of purpose and innovation, the foundation for a life of inspiration. We empower residents with engaging programs and community growth opportunities, providing a stronger connection to the community at large." (See http://livekaufman.com/communities/polaris/, as viewed March 11, 2018.)

11. Defendants' conduct caused Mr. Gorrie to endure injuries, pain, suffering, medical costs, lost wages, and other damages, to include but not limited to overpaying rent for the disputed apartment.

12. These damages arose while Mr. Gorrie rented and lived in an apartment home which Defendants owned and operated.

13. Mr. Gorrie's damages occurred due to exposure to hazardous environmental conditions which defective construction techniques precipitated.

14. Defendants knew such defective construction techniques afflicted Mr. Gorrie's apartment home in as much as Defendants had sued the building contractor approximately seven (7) months prior to executing a rental lease agreement with Mr. Gorrie. See *Thompson Thrift Construction, Inc. v. 801 Polaris, LLC, et al.*, Case No. 2:15-cv-2836 (S.D. Ohio 2015) (Frost, D.J.; Marbley, D.J.), Answer and Counterclaim of Polaris 801, Doc. # 7, Page ID# 76-7, ¶¶ 17-24. (Ex. B, Copy of Answer and Counterclaim, attached.)

15. Plaintiff in *Thompson Thrift Construction, Inc., supra* filed on September 16, 2015. On November 16, 2015, 801 Polaris, LLC filed its Answer with Counterclaims, asserting defects

in the construction of the apartment units at 801 Polaris. On July 26, 2016, the Parties settled their claims. (Ex. C, copy of Docket from *Thompson Thrift Construction*, *supra*.)

16. For this Complaint, Mr. Gorrie states as follows:

**Parties and Jurisdiction**

17. Plaintiff reincorporates by reference as if fully rewritten all previous paragraphs of this Complaint.

18. At all times relevant, Plaintiff Steve Gorrie resided in Delaware County, Ohio. Mr. Gorrie now resides in Georgia.

19. At all times relevant, 801 Polaris, LLC has operated as a domestic limited liability company, formed under the laws of the State of Ohio, operating as a for profit business.

20. At all times relevant, Kaufman, LLC has operated as a domestic limited liability company, formed under the laws of the State of Ohio, operating as a for profit business.

21. At all times relevant, Kaufman, LLC does business as Kaufman Development.

22. At all times relevant, Kaufman Development provides services in "real estate construction, development, investment and management of properties…." (https://www.inc.com/profile/kaufman-development, viewed March 8, 2019.)

23. Defendant Bradley S. Slomsky, is the Senior Community Curator at 801 Polaris, LLC and functions as the property manager for 801 Polaris, LLC.

24. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), (2).

25. This Court has subject matter jurisdiction via 28 U.S.C. §1332(a). Mr. Gorrie endured total damages in excess of $75,000, to include but not limited to medical expenses, pain and suffering, lost paid time off, overpaid rent, and punitive damages. Mr. Gorrie could recover well over $100,000.

**Factual Background Supporting Legal Claims**

26. On or about April 6, 2016, Plaintiff Gorrie signed a lease with 801 Polaris to rent a one-bedroom apartment. (Ex. A, Lease Gorrie and 801 Polaris, attached.) He was to pay $893 per month for his apartment (and another $100 per month for a garage unit). (*Id.*)

27. The lease was to end on July 2, 2017. He instead vacated the unit on or about May 13, 2017, renting this rental unit for over 400 days.

28. On or about June 17, 2016, Mr. Gorrie first sought medical care for exposure to hazardous environmental conditions which Defendants either created, permitted to be created, and/or failed to remediate. He had no idea what was causing his illness.

29. On or about March 16, 2017, medical tests showed two types of fungus or toxic molds in his blood – alternaria alternate and aspergilluis fumigatus. Mr. Gorrie learned of these molds being in his blood after March 16, 2017.

30. In May 2017, Mr. Gorrie moved from his apartment home due to ongoing injuries to his health and well-being.

31. For years, Mr. Gorrie has worked hard – in the corporate world and the athletics world.

32. In college, Mr. Gorrie played football for Presbyterian College in South Carolina, a Division II school. While there, he earned All American honors.

33. After graduating college, Mr. Gorrie pursued a career in professional football. An injury in training camp sidelined him with the NFL.

34. Instead, he pursued his football ambitions with the Xtreme Football League, Regional Football League and Arena Football League. (See John Archibald, "Settling the Score: Gorrie Takes One More Run," Resolution Sports, http://ressports.com/news/?article_id=1158, as viewed March 12, 2018.)

35. In 2012, Mr. Gorrie ceased all efforts with professional football. He did not end his passion for health and fitness, though.

36. At 6' and 250 pounds, Mr. Gorrie to this day maintains a BMI that reflects his daily work-out routine.

37. Typically, Mr. Gorrie works out as follows. He does weight training four times a week. He does cardio training two to three times per week.

38. Mr. Gorrie maintained this regimen prior to moving to Ohio for his career with FedEx.

39. As a Regional Security Manager for FedEx Office, Mr. Gorrie worked from home much of the time during this rental tenancy.

40. Mr. Gorrie previously worked and lived in Florida. In 2016, his bosses wanted Mr. Gorrie to transfer to Ohio to perform his duties.

41. Mr. Gorrie arrived in the Columbus area to secure rental housing. He met with representatives from Defendants, including at least Bradley S. Slomsky.

42. Meeting with representatives from the Defendants, to include Mr. Slomsky, Mr. Gorrie learned he could move into an apartment unit that had one bedroom with walk-in closet, one bath, and a walk-in laundry room.

43. Upon arrival on his move-in day, Mr. Gorrie learned that Defendants had not reserved for him the apartment unit to which he had agreed.

44. With his personal possessions on a rental truck, to include his car on a trailer, Mr. Gorrie had no choice but to accept the incorrect rental unit.

45. Within thirty days of moving into the rental unit, Mr. Gorrie observed construction defects in it.

46. Namely, Mr. Gorrie observed a gap involving the balcony doors. This one- to two-inch gap allowed air and moisture into the unit.

6

47. Mr. Gorrie reported this gap to 801 Polaris' property management and requested repairs.

48. 801 Polaris generated a work order. Its maintenance department attempted to repair the gap. Its efforts failed to fix the problem.

49. The maintenance department installed a weather strip over the gap. This did not fix the problem. It hid it. Air and moisture still entered the unit.

50. Mr. Gorrie told Defendants that this repair attempt was not successful.

51. In fact, this repair effort involved the removal of nearly one side of Mr. Gorrie's apartment.

52. This repair effort involved not only 801 Polaris, but also the actual building contractor for this building.

53. By this point, 801 Polaris had known for several months that it had a defective building.

54. Within his first thirty days in this unit, Mr. Gorrie already had experienced breathing difficulties. He also experienced increased congestion. These issues had nothing to do with seasonal allergies.

55. Mr. Gorrie had no pre-existing condition which the hazardous environmental conditions in the rental unit merely aggravated or triggered.

56. Mr. Gorrie continued to try to convince Defendants to repair the problems in his rental unit.

57. Mr. Gorrie informed 801 Polaris' Bradley S. Slomsky, Sr. Community Curator ("Mr. Slomsky"), that the gap in the balcony doors still existed.

58. Mr. Gorrie informed property management several more times that the gap persisted in his apartment.

59. Mr. Gorrie informed property management that the gap caused him to run the air condition more than expected to cool the unit.

60. Property management finally relented. It replaced the entire balcony door.

61. That repair effort did not solve the entire problem, though.

7

62. Similarly, the air conditioning system itself was deficient. Over the course of the lease, the air condition unit broke twice.

63. During repair efforts, Defendants had to install a temporary window-mounted unit. Due to this effort, gaps existed around the unit. That allowed mold to grow.

64. In fact, 801 Polaris knew its curative efforts were doomed.

65. In November 2015, 801 Polaris had sued the general contractor, which built the instant property, due to numerous construction defects.

66. Such defects included the failure to install insulation, caulk, and other materials related to sound transmission. These defects allowed mold to spread as well.

67. Other construction defects included failure to wrap the exterior walls with proper wrap; failure to build exterior walls correctly; and failure to install windows and doors correctly. (See Ex. B, attached, *Thompson Thrift Construction, Inc. v. 801 Polaris, LLC, et al.*, Case No. 2:15-cv-2836 (S.D. Ohio 2015) (Frost, D.J.; Marbley, D.J.), Answer and Counterclaim of Polaris 801, Doc. # 7, Page ID# 76-7, ¶¶ 17-24.)

68. By 7/27/2016, the Parties in *Thompson Thrift Construction, Inc. v. 801 Polaris, LLC*, had settled their claims, having filed suit 9/16/2015. (Ex. C, Docket *Thompson v. 801 Polaris, LLC.*)

69. These defects permitted both air and moisture to invade the unit Mr. Gorrie rented. These defects pre-existed Mr. Gorrie's tenancy.

70. Defendants knew or should have known its rental unit contained construction defects.

71. Defendants knew or should have known the construction defects promoted the growth of mold in his rental unit.

72. Defendants knew or should have known that such construction defects permitted mold to invade the instant rental unit.

8

73. While he waited for the proper fix to the balcony doors, Mr. Gorrie's respiratory condition became worse.

74. Even though property management had replaced the balcony doors, the replacement doors were little to no better.

75. Namely, the doors did not shut all the way. Hence, the opening was either not square, plumb, or both.

76. Mr. Gorrie immediately informed property management of this deficiency.

77. Defendants failed to take immediate corrective action.

78. During this time, Mr. Gorrie endured excess dirt and debris in his rental unit.

79. Property management and the maintenance department at 801 Polaris refused any further efforts to repair the problems.

80. Defendants told Mr. Gorrie it would repair nothing else.

81. Mr. Gorrie at one point informed 801 Polaris that he observed moisture collecting around the doors.

82. The underlying lease extols tenants to report excess moisture such as this. That lease notes, "[w]hen excess moisture is present inside a dwelling, mold can grow." (Ex. A, Lease, §19, "Mold Information & Prevention.")

83. Nonetheless, Defendants took no more steps to cure the defects in his apartment home that were harming Mr. Gorrie.

84. Weeks after 801 Polaris refused to spend any more time or money on the balcony doors, Mr. Gorrie observed a new problem - mold in the frame of a bedroom window.

85. Mr. Gorrie requested mold testing. 801 Polaris refused. Still, the attached photographs show the presence of mold. (Ex. D, Mold Photos, attached.)

86. The mold existed at least in the walls and windows facing roughly east and south. (Ex. D, Mold Photos, attached.) Upon information and belief, Mr. Gorrie understands mold also was in the closet that stored the central air conditioning unit.

87. These terrible conditions impaired Mr. Gorrie's health. In June 2016, having lived in this rental unit for less than two months, Mr. Gorrie sought medical care for respiratory issues. He entered the hospital for treatment.

88. Mr. Gorrie received additional medical care. He entered the hospital for treatment again with respiratory issues in July 2016, on September 5, 2016, and on September 7, 2016. He entered the hospital again for treatment for respiratory issues in April 2017.

89. Mr. Gorrie also received medical attention outside any hospital on several other occasions.

90. Mr. Gorrie obtained medical care other than at a hospital on at least eight (8) occasions. He did so on February 15, 2017; March 2, 2017; March 13, 2017; March 31, 2017; April 5, 2017; April 12, 2017; April 26, 2017; and May 4, 2017.

91. Mr. Gorrie received extensive medical care. Such care eliminated cause after cause. For months, he did not know what was happening to him. He did not know what was going on. He knew doctor after doctor ordered test after test. He never had been sick like this; he feared the worst – having an unknown fatal illness. He lost sleep. He noticed many nights required him to take cough medication. It impacted various areas of his personal life. It impacted his work life, too.

92. Eventually, doctors ordered blood tests. Those tests revealed two different forms of fungus in Mr. Gorrie's blood.

93. No earlier than May 2017, Mr. Gorrie realized Defendants completely had abandoned its obligations under their written lease agreement and Ohio law.

94. Namely, Mr. Gorrie knew by May 2017 that Defendants had breached their obligations under the lease and Ohio law to provide a habitable rental unit.

95. Defendants constructively had evicted Mr. Gorrie, causing him to move out.

96. Mr. Gorrie endured expenses related to moving from his rental unit in dispute in this matter.

97. Mr. Gorrie tried to secure an early and immediate release from his lease. He did so after he learned that at least mold from his apartment was found in his blood per laboratory tests which his treating physician had ordered.

98. Defendants rejected that effort to terminate the lease early.

99. Instead, Defendants required Mr. Gorrie to stay two more months under his lease before Defendants released Mr. Gorrie from his fifteen-month lease.

100. Defendants forced this two-month extension on Mr. Gorrie to avoid legal efforts against him had he not remained under the lease agreement for two more months.

101. Mr. Gorrie also asked Defendants to transfer him from the disputed rental unit to another rental unit under Defendants' portfolio.

102. Defendants also rejected that request to transfer apartment units.

103. Since moving out of his unit at 801 Polaris, Mr. Gorrie's health has improved.

104. Mr. Gorrie has not required additional hospitalizations. He has not required in-patient care. He has not required treatment from his medical doctor.

105. 801 Polaris breached its agreement with Mr. Gorrie. It failed to provide him with a habitable rental unit. It obtained the agreement without telling Mr. Gorrie of the defective construction and harmful environmental conditions that pervaded the rental unit.

106. At all times, each Defendant acted jointly and severally. Thus, Defendants are liable individually or together for all damages which Mr. Gorrie experienced.

**First Claim for Relief - (Breach of Contract)**

107. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

108. Mr. Gorrie entered into a lease agreement with Defendants.

109. Mr. Gorrie performed his duties and obligations per the lease agreement with Defendants.

110. Defendants breached that lease agreement Mr. Gorrie.

111. Defendant's breaches include but are not limited to (i) promising to provide Mr. Gorrie with a safe, habitable luxurious apartment home and (ii) failing to correct construction defects in Mr. Gorrie's apartment home that created hazardous environmental conditions that impaired Mr. Gorrie's health.

112. Defendants' acts or omissions caused each Plaintiff to endure harm in an amount to be proven at trial.

**Second Claim for Relief - (Breach of Implied Warranty of Habitability)**

113. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

114. Defendants breached the warranty of habitability under Ohio R.C. 5321.04(A).

115. Defendants failed to comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety.

116. Defendants failed to make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition.

117. Defendants failed to maintain in good and safe working order and condition all heating, ventilating, air conditioning fixtures and appliances, supplied or required to be supplied by the landlord.

### Third Claim for Relief - (Constructive Eviction)

118. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

119. Defendants had duties and obligations per the underlying lease agreement and per Ohio law.

120. Defendants failed to fulfill its duties and obligations per that lease agreement and per Ohio law.

121. Defendants' conduct forced Plaintiff Steve Gorrie out of his apartment home.

122. Defendants obstructed, interfered with or took away from Mr. Gorrie's rights and privileges as a tenant, depriving him of the beneficial use of his leasehold.

123. Defendants' obstruction, interference and diminishment of Mr. Gorrie's rights and privileges as a tenant was substantial.

### Fourth Claim for Relief - (Fraud in the Inducement)

124. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

125. An agreement existed between Mr. Gorrie and Defendants. The parties signed an agreement for Mr. Gorrie to rent an apartment at 801 Polaris.

126. Defendants, though one or more agents, materially misrepresented the condition of the actual apartment to Mr. Gorrie.

127. Defendants, though one or more of agents, materially misrepresented the habitability of the apartment at 801 Polaris.

128. Defendants, though one or more of its agents, induced Mr. Gorrie to rely upon their material misrepresentations about the habitability of the rental apartment Defendants provided for him.

129. Mr. Gorrie reasonably relied upon Defendants' material misrepresentations to his detriment.

130. Defendants continued to misrepresent the condition and habitability of the rental apartment throughout Mr. Gorrie's tenancy.

131. Due to his reliance upon such material misrepresentations, Mr. Gorrie suffered damages in an amount to be proven at trial in excess of $75,000.

### Fifth Claim for Relief - (Negligence)

132. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

133. Defendants owed a duty, per the underlying lease agreement and to applicable Ohio law, to Plaintiff to prevent environmental hazards from developing in his apartment due to construction defects.

134. Defendants knew construction defects permeated 801 Polaris Parkway.

135. Defendants knew Mr. Gorrie's apartment had construction defects.

136. Defendants knew Mr. Gorrie's apartment developed environmental conditions that created health hazards.

137. Defendants knew the environmental health hazards each created or failed to remediate caused Mr. Gorrie to become ill.

138. Defendants failed to cure the construction defects.

139. Defendants breached its duties and obligations owed to Mr. Gorrie.

140. As a proximate cause of Defendants' breach of their respective duties and obligations to Mr. Gorrie, Mr. Gorrie suffered illness, damages, pain and anguish, lost wages, and other harm in an amount to be proven at trial in excess of $75,000.

141. The doctrine of res ipsa loquitor applies.

## Sixth Claim for Relief - (Negligence per se)

142. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

143. Defendants owed a duty to Mr. Gorrie under Ohio state law to provide an apartment home that was fit and habitable. R.C. 5321.04(A).

144. Defendants failed to comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety.

145. Defendants failed to make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition.

146. Defendants failed to maintain in good and safe working order and condition all heating, ventilating, and air conditioning fixtures and appliances, supplied or required to be supplied by the landlord.

147. Defendants owed a duty to Plaintiff to prevent environmental hazards from developing in his apartment due to construction defects.

148. Defendants knew construction defects permeated the apartments at 801 Polaris.

149. Defendants knew Mr. Gorrie's apartment had construction defects.

150. Defendants knew Mr. Gorrie's apartment developed environmental conditions that created health hazards.

151. Defendants knew the environmental health hazards each created or failed to remediate caused Mr. Gorrie to become ill.

152. Defendants failed to cure the construction defects.

153. Defendants breached its duties and obligations owed to Mr. Gorrie.

154. Defendants' conduct constitutes negligence per se under Ohio law.

155. As a proximate cause of Defendants' breach of their respective duties and obligations to Mr. Gorrie, Mr. Gorrie suffered illness, damages, pain and anguish, lost wages, and other harm in an amount to be proven at trial in excess of $75,000.

156. The doctrine of res ipsa loquitor applies.

### Seventh Claim for Relief - (Nuisance: Absolute or Qualified)

157. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

158. Defendants' conduct and lack of action where action was required wrongfully invaded Mr. Gorrie's legal rights and interests in the disputed rental property.  Thus, Defendants' conduct and lack of action where action was required constituted a nuisance.

159. Defendants' conduct and lack of action where action was required constituted an intentional and unreasonable invasion of Mr. Gorrie's legal rights and interests.

160. Alternatively, Defendants' conduct and lack of action where action was required constituted an unintentional invasion of Mr. Gorrie's legal rights and interests where such invasion by Defendants was negligent, reckless or abnormally dangerous conduct.

161. Defendants' invasion constituted an absolute nuisance, for which Defendants are strictly liable.

162. Defendants' invasion of Mr. Gorrie's legal rights and interests was an absolute interference with his use and enjoyment of his rental property.

163. Defendants had no just cause or excuse to permit or cause the invasion of Mr. Gorrie's legal rights and interest, having control or direction over the hazardous conditions and construction defects that permeated Mr. Gorrie's rental apartment.

164. Due to Defendants' invasion of Mr. Gorrie's legal rights and interests, Defendants interfered with or annoyed or both Mr. Gorrie's legal rights and interests in the disputed rental property.

165. Defendants' invasion of Mr. Gorrie's legal rights and interests constituted unlawful conduct that was under their control or direction.

166. As such, Defendants invasion of Mr. Gorrie's legal rights and interests caused harm and injury to Mr. Gorrie in an amount to be proven at trial.

167. Alternatively, Defendants' invasion constituted a qualified nuisance.

168. Defendants' invasion of Mr. Gorrie's legal rights and interests constituted otherwise lawful conduct which each performed so negligently or carelessly or permitted others to perform so negligently or carelessly that Defendants' invasion created a potential and unreasonable risk of harm to Mr. Gorrie.

169. Defendants' invasion of Mr. Gorrie's legal rights and interests in fact, in due course, harmed Mr. Gorrie in an amount to be proven at trial in excess of $75,000.

**Eighth Claim for Relief - (Intentional Infliction of Emotional Distress)**

170. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

171. Defendant's conduct was intentional and/or reckless in an extreme and outrageous manner such that the conduct was the direct and proximate cause of serious emotional distress to Mr. Gorrie, which harm was reasonably foreseeable by Defendants.

172. Defendant's conduct was intentional and/or reckless in an extreme and outrageous.

173. Defendant proximately caused harm to Mr. Gorrie in excess of $75,000 in an amount to be proven at trial.

### Ninth Claim for Relief - (Negligent Infliction of Emotional Distress)

174. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

175. Defendant's conduct was negligent and/or careless in an extreme and outrageous manner, or was otherwise negligent, such that the conduct was the direct and proximate cause of serious emotional distress to Plaintiff Steve Gorrie, which harm was reasonably foreseeable by Defendants.

176. Defendants' conduct was intentional and/or reckless in an extreme and outrageous manner, or was otherwise negligent, such that the conduct was the direct and proximate cause of serious emotional distress to Plaintiff Steve Gorrie, which harm was reasonably foreseeable by Defendants.

177. Defendant proximately caused harm to Plaintiff Steve Gorrie, in excess of $75,000 in an amount to be proven at trial.

### Tenth Claim for Relief - (State Law Civil Conspiracy)

178. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully rewritten.

179. Through two or more of their agents, Defendants acted maliciously to injure Plaintiff in a way such that only one could not act.

180. The agents who acted maliciously in concert to harm each of the Plaintiff include but are not limited to fraudulently inducing Mr. Gorrie to enter into the lease agreement for the rental apartment in question.

181. As a direct and proximate result of the malicious combination of actions by two or more agents of Defendants, Plaintiff suffered actual damages in an amount to be determined at trial in excess of $75,000.

**Jury Trial Demand**

Plaintiff seeks a jury trial as to all issues and claims for which the right applies.

**Prayer for Relief**

WHEREFORE, Plaintiff demand judgment as follows:

A. Compensatory damages in an amount to be proven at trial of at least $75,000 against each Defendant;
B. Punitive damages in an amount to be proven at trial against each Defendant;
C. Prohibit renting the disputed apartment unit until it comports with applicable health and safety requirements under applicable municipal housing codes;
D. Pre-judgment interest against each Defendant;
E. Post-judgment interest against each Defendant;
F. Any other money damages as proven at trial against each Defendant;
G. Costs of this action;
H. Reasonable attorney fees as allowed by Ohio law;
I. All recovery permitted by Ohio law; and,
J. Any other relief to which Plaintiff is entitled by law or equity.

Respectfully submitted,

**Eric Holloway Law Group, LLC**

s/*J. Eric Holloway*
_____
J. Eric Holloway (0063857)
Eric Holloway Law Group, LLC
5650 Blazer Parkway, Suite 100
Dublin, OH 43017
614-526-8552 (D); (614) 522-6789 (Fax)
Eric@EricHollowayLaw.com
www.EricHollowayLaw.com
Trial Counsel for Plaintiff Steve W. Gorrie